*1364 Opinion for the court filed by Circuit Judge BRYSON. Dissenting opinion filed by Circuit Judge NEWMAN.
BRYSON, Circuit Judge.
This appeal arises from the examination of Reissue Application No. 10/643,674 (“the reissue application”), which stemmed from U.S. Patent No. 6,168,626 (“the '626 patent”). During prosecution, the examiner rejected all claims of the reissue application on two independent grounds: (1) obviousness over U.S. Patent No. 5,030,402 (“Zachariades”) in view of U.S. Patent No. 3,886,056 (“Kitamaru”), and (2) impermissible recapture of subject matter surrendered during the original prosecution under 35 U.S.C. § 251. The Board affirmed the examiner’s rejection on both grounds. We agree with the Board that the claims of the reissue application would have been obvious in light of the prior art. We therefore affirm on that basis, and we do not address the portion of the Board’s decision regarding the recapture issue.
I
The '626 patent is entitled “Ultra High Molecular Weight Polyethylene [“UHMWPE”] Molded Article for Artificial Joints and Method of Preparing the Same.” As the title suggests, the claims of the '626 patent and the reissue application are directed toward UHMWPE and, more specifically, UHMWPE for use in artificial joints. Reissue claim 40, which is generally representative of the reissue claims on appeal, recites:
40. A method for producing an ultra high molecular weight polyethylene block, comprising:
(a)erosslinking an ultra high molecular weight polyethylene block having a molecular weight not less than 5 million by irradiating the block with a high energy radiation at a level of at least 1 MR;
(b) heating said crosslinked block up to a compression deformable temperature below the melting point of the UHMWPE;
(c) subjecting said heated block to pressure; and then
(d) cooling said block.
Reissue claim 84 is substantially the same as claim 40, except that the preamble recites “[a] method for producing an ultra high molecular weight polyethylene artificial joint component for implantation in a human or other animal,” and it adds an additional step (e), which recites “processing said cooled block to form said component.”
In rejecting the claims of the reissue application as obvious, the Board relied on the same two references invoked by the examiner: Zachariades and Kitamaru. Zachariades discloses a method for producing UHMWPE having a molecular weight of three million to six million. In particular, Zachariades teaches compression deformation of UHMWPE at a temperature between 80° C and the melting point of the polymer, applying pressure during and after cooling to retain chain orientation, subjecting the final product to radiation crosslinking after unmolding, and then shaping the deformed UHMWPE into a final product. Kitamaru discloses a method for preparing UHMWPE by first crosslinking the UHMWPE by irradiating it with ionizing radiation, then heating the crosslinked UHMWPE to a molten state at a temperature of at least the melting point of the polyethylene while it is extended or compressed under pressure (i.e., compression deformed), and then cooling the polyethylene while maintaining it in an extended or compressed state. Kitamaru teaches that its method of crosslinking before compression results in a product that has a higher melting or softening point, improved transparency, and excellent dimensional stability.
*1365 During prosecution, the examiner found that Zachariades meets each limitation of the reissue claims except for the step of crosslinking the UHMWPE prior to compression. The examiner, however, found that Kitamaru discloses crosslinking the UHMWPE prior to compression. The examiner then found that it would have been obvious to a person of ordinary skill in the art to use crosslinked UHMWPE in the method of making the UHMWPE products disclosed by Zachariades given Kitamaru’s teaching that crosslinking prior to compression deformation results in improved transparency, an increased melting point, and excellent dimensional stability. The examiner further found that one of ordinary skill in the art would have had a reasonable expectation of success in obtaining those enhanced properties by combining the techniques taught by the two references.
On appeal to the Board, Hyon[2] did not challenge the examiner’s findings as to what the references teach, and the Board expressly adopted the examiner’s findings in that respect. Instead, Hyon argued only that there would have been no motivation to combine the teachings of Zachariades and Kitamaru. The Board rejected that argument, agreeing with the examiner that a person of ordinary skill in the art would have been motivated to combine the references. Specifically, the Board found that Zachariades and Kitamaru “teach the same material (UHMWPE) and Kitamaru teaches benefits of ... cross-linking before deformation of the UHMWPE.” It also found that “Kitamaru focuses on cross-linking prior to extending as the reason for providing the improved properties,” and that “the art provides the focus on using the cross-linking step prior to molding.” The Board concluded that using the techñique disclosed by the claims of the reissue application “appears to be nothing more than the predictable use of a prior art element (i.e., cross-linking prior to molding) according to its established function (i.e., to improve material properties such as [by increasing] the melting point).”
The Board considered and expressly rejected Hyon’s arguments that a motivation to combine was lacking because the references are directed to different products (Zachariades to artificial joints; Kitamaru to films or sheets). The Board noted that both references are directed to UHMWPE, and that Zachariades teaches structures with “reduced thickness” or a “thinner load” having enhanced mechanical properties. The Board also expressly rejected Hyon’s argument that one of ordinary skill in the art would not have been motivated to combine the pre-compression crosslinking step of Kitamaru with Zachariades. Instead, it found that “Kitamaru provides the reason for modifying Zachariades to cross-link before extending: to provide UHMWPE articles with improved dimensional stability and transparency at high temperatures.” In addition, the Board rejected Hyon’s claim that the references fail to teach further processing to make a final product after deforming and cooling the UHMWPE. On that issue, the Board found that Zachariades teaches “machining into a final product.” Accordingly, the Board affirmed the examiner’s rejection of all the claims of the reissue application.
II
As he did before the Board, Hyon challenges only the Board’s determination that there was a motivation to combine the references; he does not challenge the Board’s determination as to what the references teach.[3] The “existence of a reason *1366 for a person of ordinary skill to combine references” is a question of fact that we review for substantial evidence. In re Constr. Equip. Co., 665 F.3d 1254, 1255 (Fed.Cir.2011). Because the Board’s findings concerning motivation to combine are supported by substantial evidence, we affirm.
Hyon argues that one of ordinary skill in the art would not be motivated to combine the references because Zachariades is directed to artificial joints whereas Kitamaru is directed to films or sheets, which Hyon contends represent “fundamentally different material technologies.” As noted above, however, both Zachariades and Kitamaru pertain to UHMWPE. Although Zachariades primarily contemplates the use of the polyethylene for artificial joints, it generically discloses “a method for producing an UHMWPE product with enhanced planar mechanical properties.” Similarly, although Kitamaru primarily contemplates the use of the polyethylene to generate films and sheets, it generically discloses a “process for producing a high melting temperature polyethylene.” Neither reference limits the structure of the UHMWPE product that can be made; artificial joints (Zachariades) and sheets (Kitamaru) are simply embodiments of the polyethylene made by each process. Moreover, the distinction between the final products described in the two references is not as great as Hyon suggests. As the Board noted, Zachariades states that its recited method can be used to create thin products, Zachariades, col. 2, 11. 44, 66-67; col. 3, 11. 46-47, and discusses products that are “transparent,” id., col. 9, 11. 29-30, 48. Accordingly, the Board’s conclusion that the references both teach processes directed to making the same class of products is supported by substantial evidence, as is its determination that differences in the UHMWPE products described by the embodiments do not negate the motivation to combine the references.
Substantial evidence also supports the Board’s determination that the fact that Zachariades teaches crosslinking after molding does not affect the motivation to combine. Zachariades does not state that UHMWPE products can be made only by crosslinking after compression deformation, nor does it state or suggest that faulty or inferior products will result from crosslinking prior to compression. The Board found that “Kitamaru teaches benefits of ... cross-linking before deformation of the UHMWPE.” It also found that “Kitamaru focuses on cross-linking prior to extending as the reason for providing the improved properties,” and that “the art provides the focus on using the cross-linking step prior to molding.” As noted above, Kitamaru teaches that its method results in a product that has a higher melting or softening point, improved transparency, and excellent dimensional stability.[4]
For similar reasons, Hyon’s argument that the Board improperly relied on the *1367 arbitrary selection of a single feature from Kitamaru (pre-compression crosslinking) while ignoring the other features is not persuasive. In support of his position, Hyon relies on In re Wesslau, 53 CCPA 746, 353 F.2d 238 (1965), which states:
It is impermissible within the framework of section 103 to pick and choose from any one reference only as much of it as will support a given position, to the exclusion of other parts necessary to the full appreciation of what such reference fairly suggests to one of ordinary skill in the art.
353 F.2d at 241. In this case, however, the Board did not take the teachings of Kitamaru in isolation or out of context. As noted above, the Board found that one of skill in the art would appreciate that the pre-compression crosslinking step could be combined with Zachariades to obtain beneficial results. Both references involve similarly structured UHMWPE, and Zachariades does not disparage pre-compression crosslinking. Kitamaru expressly notes that crosslinking to improve the properties of UHMWPE was known in the art, but that the prior art methods did not result in increased melting point or improved transparency. Kitamaru teaches that its method results in a product with those improved properties. In addition, as found by the Board, Kitamaru “focuses on cross-linking prior to extending as the reason for providing the improved properties.” Accordingly, it is clear that the examiner and the Board selected the pre-compression crosslinking step because Kitamaru indicated that pre-compression erosslinking was responsible for the improved properties. Given Kitamaru’s discussion of crosslinking in the prior art and its focus on pre-compression crosslinking as a reason for the improved properties of polyethylene produced using its method, we cannot say that the Board “exclud[ed] ... other parts [of the reference] necessary to the full appreciation of what such reference fairly suggests to one of ordinary skill in the art.” Wesslau, 353 F.2d at 241. The Board merely selected an element emphasized by the reference, relying on the reference’s suggestion that the selected element was responsible for the improved properties. Considering the references as a whole, as required by Wesslau, we conclude that the Board’s determination regarding motivation to combine is supported by substantial evidence.
Finally, substantial evidence supports the Board’s determination that Zachariades teaches post-processing to form a final component, as required by claim 84 of the reissue application. For example, Zachariades states that “[t]he product is simultaneously shaped into the final product”; that the compression-deformed product “can be cut off by stamping or other process”; and that “the so-produced solid-state deformed UHMWPE can be used as a precursor for its machining into a final product.” Those statements are sufficient to support the Board’s finding that Zachariades teaches post-processing to form a final component.
Ill
In sum, substantial evidence supports the Board’s finding that a person of ordinary skill in the art would have been motivated to combine the early crosslinking step of Kitamaru with the process of Zachariades to obtain the enhanced properties disclosed by Kitamaru that result from crosslinking prior to deformation. We therefore affirm the Board’s determination that the reissue claims would have been obvious in light of the prior art. Accordingly, we need not address whether the reissue claims impermissibly sought to recapture subject matter surrendered during the original prosecution in violation of 35 U.S.C. § 251.
AFFIRMED

. We refer to the applicants collectively as “Hyon.”

. The dissent suggests that Hyon's method requires only a "slight amount” of crosslink *1366 ing, whereas Kitamaru teaches a "high dose.” However, Hyon has not raised that distinction either before the Board or on appeal to this court. In fact, Hyon explicitly noted during prosecution that the amount of crosslinking radiation “is [not] limited to any particular numerical dosage range.”

. At oral argument, Hyon contended that Zachariades could not be combined with Kitamaru because the molding step of Zachariades would not work if the UHMWPE were crosslinked first, as the crosslinking would inhibit molding. Because that argument was not presented to the Board or in Hyon’s briefs to this court, we decline to address it. See Sage Prods., Inc. v. Devon Indus., Inc., 126 F.3d 1420, 1426 (Fed.Cir.1997). In any event, Hyon failed to adduce any evidence that crosslinking prior to molding would inhibit molding.