NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**COOK GROUP INCORPORATED, COOK MEDICAL LLC,**
*Appellants*

**v.**

**BOSTON SCIENTIFIC SCIMED, INC.,**
*Cross-Appellant*

---

2019-1370, 2019-1372, 2019-1375, 2019-1377

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2017-00133, IPR2017-00134.

---

Decided:  April 30, 2020

---

LAURA A. LYDIGSEN, Brinks Gilson & Lione, Chicago, IL, argued for appellants.  Also represented by JEFFRY M. NICHOLS, SARAH GOODMAN, ANDREW MCELLIGOTT, JASON WAYNE SCHIGELONE.

DAVID A. CAINE, Arnold & Porter Kaye Scholer LLP, Palo Alto, CA, argued for cross-appellant.  Also represented by MATTHEW WOLF, Washington, DC.

---

Before PROST, *Chief Judge,* DYK and O'MALLEY, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

This case arises from the final written decisions of the Patent Trial and Appeal Board ("Board") in two related inter partes reviews ("IPRs"). Cook Group Inc. and Cook Medical LLC (collectively "Cook") appeal the Board's finding that Cook failed to demonstrate by a preponderance of the evidence the unpatentability of claims 4–6, 15, and 20 of U.S. Patent No. 8,709,027 ("'027 patent"). *Cook Grp. Inc. v. Bos. Sci. Scimed, Inc.*, No. IPR2017-00133, 2018 Pat. App. LEXIS 10662 (P.T.A.B. Nov. 3, 2018); *Cook Grp. Inc. v. Bos. Sci. Scimed, Inc.*, No. IPR2017-00134, 2018 Pat. App. LEXIS 10663 (P.T.A.B. Nov. 3, 2018). Boston Scientific Scimed, Inc. ("Boston") cross-appeals the Board's finding that claims 1–3, 7–14, and 16–19 of the '027 patent are unpatentable. Because the Board erred in its analysis of claims 4–6, 15, and 20, we *vacate* and *remand* to the Board for further consideration of those claims. On Boston's cross-appeal, we find no error in the Board's decision and *affirm*.

## I. BACKGROUND

### A. The '027 Patent

The '027 patent issued to Boston on April 29, 2014. It discloses a reversibly closeable compression clip for endoscopically stopping bleeding of blood vessels along the gastrointestinal tract. '027 patent, col. 2, ll. 59–63. Claims 1 and 20 are representative of the claims at issue on appeal:

1. A medical device, comprising:

> a clip having a first clip leg having a first inner surface and a second clip leg having a second inner surface;

> a control member extending from a proximal actuator to the clip; and

a linkage operably associated with the control member to spread the first and second clip legs apart from one another into a tissue-receiving configuration as the control member is moved distally relative to the clip, the linkage contacting the inner surfaces of the first and second clip legs to drive the first and second clip legs radially outward as the control member is moved distally relative to the clip.

\* \* \*

20. A method, comprising:

inserting into a body a medical device comprising a clip having a first clip leg having a first inner surface and a second clip leg having a second inner surface, a control member extending from a proximal actuator to the clip and a linkage coupled to the control member;

positioning the medical device at a desired deployment location;

moving the control member distally to cause the clip to move distally relative to a sleeve housing at least a portion of the clip therein, the movement causing the linkage to contact the first and second inner surfaces to drive the first and second clip legs radially outward to a tissue-receiving configuration;

adjusting a position of the clip so that target tissue is received between the first and second clip legs;

drawing the control member proximally relative to the sleeve to draw the clip into

the sleeve to receive the target tissue between the first and second clip legs; and

applying a proximal tensile force of at least a threshold level to the control member to separate a link coupling the control member to the clip.

*Id.* at col. 15, l. 33– col. 17, l. 6.

## B. Prior Art

Cook's petitions asserted several grounds of unpatentability based on the following prior art references.

*Malecki.* U.S. Patent No. 5,626,607 ("Malecki") issued on May 6, 1997. J.A. 169. Malecki discloses a clamp that can be used to clamp blood vessels or other body parts during medical procedures. J.A. 201. Two Malecki embodiments are relevant to this appeal. Embodiment #2 is depicted in Figure 25:



FIG. 25

J.A. 186. Figure 25 shows a clamp 304B and a clamp positioner 306B. J.A. 207. The clamp 304B engages with the clamp positioner 306B via engagement between square opening 384 on the clamp positioner and the square outer

surface 392 of jaw extension 320B.  J.A. 208.  In Malecki Embodiment #2, the operator turns the hollow drive body 346B using handle 394 while the stabilizing rod 378 is prevented from rotating via handle 380.  *Id.*    The rotation causes jaw extension 320B and actuator housing 324B to engage, further causing the actuator housing 324B to move relative to the jaws 308B, 310B.  *Id.*

Malecki Embodiment #1 is Depicted in Figure 28A:



FIG. 28A

J.A. 189.  The clamp of Malecki Embodiment #1 is applied using a clamp positioner similar to clamp positioner 306B seen in Figure 25.  J.A. 208.  In Embodiment #1, hex-head 400 is rotated while base 396 is kept stable by the clamp positioner.  *Id.*

*Sackier*.  U.S. Patent No. 5,749,881 ("Sackier") issued on May 12, 1998 for a "Laparoscopic Surgical Clamp."  J.A. 229.  Sackier discloses a clamp that can be moved between a free (open) state and operable (closed) state for use in occluding portions of the body during laparoscopic surgery.  The device is designed to fit within the trocar used to perform the surgery.  J.A. 238.  Sackier also discloses a clamp applier that contains a means to engage and disengage the clamp jaws.  J.A. 242.  The relevant aspects of Sackier are depicted in Figures 15–17:



J.A. 9771.[1]

*Nishioka.*  U.S. Patent No. 5,843,000 ("Nishioka") issued on December 1, 1998 for "Optical Biopsy Forceps and Method of Diagnosing Tissue."  J.A. 215.  Nishioka discloses an integrated optical biopsy forceps device.  *Id.*  The device includes a pair of cutting jaws that are drawn together via control links.  J.A. 225–26.

*Matsuno.*  U.S. Patent No. 5,766,189 ("Matsuno") issued on June 16, 1998 for a "Clip Device."  J.A. 256.  Matsuno discloses a medical clip device with a clip that is biased toward the open position but can be closed by a clip squeezing ring.  J.A. 265.

*Shinozuka.*  Japanese Patent Application No. S58-211381 ("Shinozuka") is an unexamined patent filed on November 10, 1983, and published on June 8, 1985, for a "Biotissue Clip Device."  J.A. 252.  Shinozuka discloses a

---

[1]    The '027 patent issued with some figures that do not have reference numbers.  *See* J.A. 235–37.  For convenience, we include the numbered figures submitted by Boston during prosecution, rather than the figures from the issued patent.

clip device that can be inserted into the body, along with a control wire, during an endoscopy. J.A. 252–53. Once the clip is closed by a clip-tightening ring, it can be disengaged from the control wire via jiggling and left within the body. J.A. 254.

## C. IPR Proceedings

Cook filed IPR2017-00133 and IPR2017-00134 on October 27, 2016. J.A. 564, 2405. The two IPRs contained a combined seven grounds of unpatentability and raised challenges to every claim of the '027 patent. J.A. 517, 2317. In May 2017, the Board issued institution decisions, instituting on only two grounds. J.A. 656, 2513. Cook requested reconsideration of the Board's decision not to institute on claim 20 in IPR2017-00134 and the Board later granted that request. J.A. 2529–39, 2712–24. The Board held two hearings in February and April 2018. J.A. 1337–429, 3704–94.

While the Board's decision was pending, the Supreme Court issued *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348 (2018). Pursuant to *SAS*, the Board instituted on all previously uninstituted grounds. J.A. 1440–47, 3795–802. The Board held a third hearing in September 2018 and issued its final written decisions on November 3, 2018. J.A. 1, 47, 1869–947.

*IPR2017-00133.* The Board considered three grounds for finding unpatentability of the claims of the '027 patent in IPR2017-00133: (1) claims 1–3 and 7–12 as anticipated by Nishioka; (2) claims 13–14 and 16–19 as obvious in view of Nishioka and Shinozuka; and (3) claims 4–6 and 13–20 as obvious in view of Nishioka and Matsuno.

On the first ground (anticipation by Nishioka), the Board found claims 1–3 and 7–12 unpatentable as anticipated by Nishioka Figure 8:



FIG. 8

J.A. 20, 35. Boston argued before the Board that Nishioka does not disclose a clip. J.A. 21. The Board construed "clip" to mean, "a device having compression legs and capable of applying a pinching pressure." J.A. 11. Boston argued that Nishioka's jaws applied a shear force, not a compression force. J.A. 21. The parties presented conflicting expert testimony on the question. J.A. 21–22. The Board credited Cook's expert's testimony and found that Nishioka discloses a clip within the claim construction. J.A. 22.

Boston further disputed whether Nishioka discloses the claimed "linkage contacting the inner surfaces of the first and second clip legs." J.A. 17. Cook relied on Figure 8 and the testimony of its expert to support its argument that Nishioka discloses the limitation. Boston argued, in response, that Figure 8 shows the linkages attached to the sidewalls of the device. Once again, the Board credited Cook's position. It found that Nishioka discloses the disputed limitation. J.A. 27–28.

On the second ground (obviousness over Nishioka and Shinozuka), the Board found Cook had failed to carry its

burden to prove the challenged claims unpatentable as obvious in view of Nishioka and Shinozuka. J.A. 40. The Board explained that Cook had failed to establish that a person of ordinary skill in the art ("POSA") would have been motivated to combine the two references. J.A. 38–40. Similarly, on the third ground, the Board found Cook had failed to establish a motivation to combine Nishioka and Matsuno. The Board explained that the combinations would result in the loss of key functions of Nishioka. J.A. 40–42.

*IPR2017-00134.* The Board considered four grounds for finding unpatentability of the claims of the '027 patent in IPR2017-00134: (1) claims 1, 3–6, 13–15, 17, and 20 as anticipated by Sackier; (2) claims 1–20 as obvious over of Sackier and Nishioka; (3) claims 1, 3–11, and 20 as anticipated by Malecki; and (4) claims 1 and 3–11 as obvious over Malecki.

On the first ground (anticipation by Sackier), the Board found that Cook had failed to prove the challenged claims unpatentable. As to independent claim 1, it found that Sackier does not disclose moving the control member relative to the clip, as required by claim 1. J.A. 66. On independent claim 20, it found that Cook failed to establish anticipation because its argument combined aspects of two different embodiments in Sackier. J.A. 73.

On the second ground (obviousness over Sackier and Nishioka), the Board agreed with Cook that claims 1–3, 7–14, and 16–19 were unpatentable as obvious over the asserted combination. It found that the references disclose each limitation of the claims. As in IPR2017-00133, the Board found that Nishioka discloses the "linkage contacting the inner surfaces of the first and second clip legs" limitations of the claims. J.A. 81–82, 100–01. The Board found that a POSA would have been motivated to combine the two references with a reasonable expectation of success. J.A. 82–87.

On the second ground (obviousness over Sackier and Nishioka), the Board further found that Cook failed to prove the unpatentability of claims 4–6, 15, and 20. Each of these claims include a "frangible link" limitation. The Board construed "frangible link" to mean a "link between at least two components that become unlinked when a tensile load is applied." J.A. 55. Boston relied on the specification and expert testimony to contend that Sackier's clamp disconnects from the clamp applier via a lateral opening, rather than via a frangible link. J.A. 92–93. Contrary to Boston's position, Cook argued that Sackier discloses an annular snap connection, a type of frangible link. J.A. 93. The Board found the evidence on this point "evenly divided" and concluded that Cook had not carried its burden to prove obviousness of the claims with the "frangible link" limitations. J.A. 93–94, 102–103, 105–106. The Board declined to consider Boston's Preliminary Patent Owner Response, where Boston had advocated Cook's understanding of the reference. *See* J.A. 2445

On the third and fourth grounds, the Board found that Cook failed to carry its burden to prove any of the challenged claims unpatentable as anticipated by or obvious over Malecki. Malecki discloses two distinct embodiments. The Board's analysis focused exclusively on Malecki Embodiment #1. *See* J.A. 107–112. The Board found no distal movement of stabilizing rod 378 in that embodiment, as required by the claims. J.A. 111. The Board did not, however, separately consider Malecki Embodiment #2 in its final written decision, despite the fact that Cook had argued in its petition and during oral argument that Malecki Embodiment #2, not Malecki Embodiment #1, anticipated claim 20. *See* J.A. 2390–96, 4352.

The parties timely appealed the Board's final decisions. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

COOK GROUP INCORPORATED v. BOSTON SCIENTIFIC SCIMED,    11
INC.

## II. DISCUSSION

Our review is limited in an appeal from the Board. We review the Board's factual findings for substantial evidence and the Board's legal conclusions de novo. *IPCom GmbH & Co. v. HTC Corp.*, 861 F.3d 1362, 1369 (Fed. Cir. 2017). "Substantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

### A. The Board Erred in Its Anticipation Analysis of Claim 20 Over Malecki

Cook argues that the Board committed two legal errors in its analysis of claim 20: (1) it failed to address Malecki Embodiment #2, the basis of Cook's anticipation argument on claim 20 and, (2) it misunderstood claim 20 as including a limitation not found in the claim. Appellant's Br. 31–40. The relevant limitation of claim 20 provides: "moving the control member distally to cause the clip to move distally relative to a sleeve housing at least a portion of the clip therein . . . ." '027 patent, col. 16, ll. 60–62.

Cook argued in its petition that claim 20 is anticipated by Malecki Embodiment #2. J.A. 2390–96. In the final written decision, the Board did not address Malecki Embodiment #2, considering only Embodiment #1 when addressing Cook's arguments. *See* J.A. 107–12.

Cook argues that the Board's failure to address Malecki Embodiment #2 was a violation of the Board's obligation to address all ground of unpatentability raised in the petition. Appellant's Br. 33 (citing *AC Techs. S.A. v. Amazon.com, Inc.*, 912 F.3d 1358, 1364 (Fed. Cir. 2019)). Cook further argues that the Board's failure to address Embodiment #2 contravenes the requirement of the APA that the "agency tribunal must present a full and reasoned explanation of its decision." Appellant's Br. 33 (quoting *In re Lee*, 277 F.3d 1338, 1342 (Fed. Cir. 2002)). Thus, Cook

argues that the Board's decision is not in accordance with the law and should be vacated. Boston does not dispute Cook's contention that the Board's failure to address Embodiment #2 was error. *See* Appellee's Br. 43–45. We agree that the Board's failure to address Cook's Embodiment #2 arguments was error. The only question remaining is whether this error was harmless.

Cook argues that the Board's failure to address Malecki Embodiment #2 was not harmless error. Appellant's Br. 36–38. Boston responds that the Board's error was harmless because the Board found that stabilizing rod 378, which appears in both embodiments, does not move distally. Appellee's Br. 44 (citing J.A. 111). Specifically, the Board, relying on the portion of the specification Cook argues discloses the key aspect of Embodiment #2, found that the specification "does not describe any distal movement of stabilizing rod 378, but rather 'rotation of the actuator housing 324B,' which 'moves the actuator housing 324B relative to the jaws 308B, 310B.'" J.A. 111 (citing J.A. 208, col. 17, ll. 7–10). According to Boston, given this citation to the correct portion of the specification, the Board's analysis of stabilizing rod 378 in the context of Embodiment #1 applies equally to Embodiment #2. Appellee's Br. 44.

Cook responds that the Board's analysis of Embodiment #1 is insufficient to support its conclusion as to Embodiment #2 because the two embodiments work oppositely. Appellant's Reply Br. 9–14. In Embodiment #1, the operator turns the inner shaft, via handle 380, to effectuate opening and closing of clip 302C. J.A. 208, col. 17, ll. 55–57. In Embodiment #2, the operator turns the hollow drive body 346B using handle 394 while stabilizing the inner shaft against movement. *Id.* at col. 17, ll. 30–34.

Cook additionally argues that the Board based its decision on a legally erroneous interpretation of claim 20. Appellant's Br. 38–40. According to Cook, in its final written decision, the Board mistakenly considered whether claim

COOK GROUP INCORPORATED v. BOSTON SCIENTIFIC SCIMED,    13
INC.

20's control member moves "distally relative to the clip."
J.A. 107–12.  Cook argues that the Board's failure to con-
sider the actual language of claim 20 in making its decision
requires that the decision be vacated and remanded.  Ap-
pellant's Br. 39–40.  Boston responds that the Board's mis-
characterization was harmless because, although the claim
does not require that the control member move distally rel-
ative to the clip, it does require that the control member
"move distally." Appellee's Br. 44–45.  The Board expressly
found that the portion of the specification Cook relied on
did not disclose "any distal movement of the stabilizing
rod."  J.A. 111.  Thus, Boston argues that any mischarac-
terization by the Board was immaterial.

It is not possible for us to discern, on this record,
whether the Board's failure to consider Malecki Embodi-
ment #2, and its failure to evaluate the actual language of
claim 20, were harmless.  To do so would require us to, in
the first instance, construe the language of claim 20's "dis-
tal movement" limitation and to decide, as a factual matter,
how the two Malecki embodiments operate.  Those deter-
minations are properly put to the Board.  We therefore va-
cate the Board's decision that Cook failed to prove that
Malecki anticipates claim 20.  We remand to the Board for
it to consider whether, given the claim's actual language,
Malecki Embodiment #2 anticipates claim 20.

B. The Board Erred in Refusing to Consider
Boston's Preliminary Patent Owner Response

Cook argues that the Board erred in finding that Cook
did not meet its burden of proving obviousness of claims 4–
6, 15, and 20 over Sackier combined with Nishioka.  Appel-
lant's Br. 41–62.  Each of those claims require that the clip
detach from the control member via the application of

tensile force.[2]  The Board found the evidence was "evenly divided" on whether Sackier discloses a frangible link (i.e. one that separates via tensile force) or a connection wherein the clamp applier engages laterally with the clip via a lateral opening.  J.A. 93.

The parties' dispute centers on the nature of the relationship between the ball of Sackier Figure 15 and the socket of Sackier Figure 16.  Cook's position is that Sackier discloses a clip/control member combination that connect and disconnect via a snap-fit connection (e.g., the way a ballpoint pen's lid connects to the pen).   Boston Scientific's position is that Sackier discloses a clip/control member combination wherein the ball engages with the socket from the side and thus cannot be disengaged via tensile force. Cook argues that the Board's finding that the evidence was "evenly divided" between the parties' two theories is not supported by substantial evidence.  Appellant's Br. 43–48.

In reaching its conclusion, the Board relied on three pieces of evidence as support for the plausibility of Boston's position: (1) Sackier at column 1, lines 54–57 (J.A. 238), (2) Sackier at column 10, lines 22–24 (J.A. 242), and (3) paragraph 95 of Boston's expert's declaration (J.A. 14807–08).  *See* J.A. 91–94.  The first citation comes from the "Background of the Invention" and provides that, in laparoscopic surgery, undesirable separation of the clamp from the applier cannot be tolerated.  J.A. 238, col. 1, ll. 54–57.  The second citation provides that the dimensions of Sackier's ball are greater than the socket but that the socket portion can open laterally to receive the ball:

---

[2]   Most claims expressly require "tensile force."  *See* '027 patent, col. 15, l.33–col.17, l. 6.  Others require a "frangible link," which the Board construed as "becom[ing] unlinked when a tensile load is applied."  J.A. 91.

> In this embodiment the cylinder 174 has an inside diameter which is greater than the diameter of the ball 163. The flange 176 has an inside diameter greater than the recess 161, but less than the diameter of the ball 163.

> Both of the cylinders 170 and 174 can be configured to open laterally in order to permit the associated flanges 172 and 176 to engage the recesses 165 and 161. In this operative position illustrated in F1G. 17, the shaft 58a can be moved relative to the tube 23a to engage the slide 47a and move it relative to the supporting structure 34a and the jaws 36a, 38a.

J.A. 242, col. 10, ll. 20–31. The third citation is to Boston's expert's testimony that Sackier is designed to prevent unlinking via the application of a tensile load. J.A. 1407–08, ¶ 95. The Board found Boston's evidence credible. J.A. 93. The Board also considered Cook's argument that, grammatically, Sackier says the flanges "open laterally" (verb form of "open"), not that the clamp and applier engage via "lateral openings" (noun form of "opening"). J.A. 93. And the Board dismissed Cook's examples of annular snap connections as unrelated to medical devices. *Id.* The Board did not address statements Boston made in its Preliminary Patent Owner Response. During the hearing, the Board explained that it would not consider such statements.[3] J.A. 1380–81.

---

[3]    In a related IPR, the Board addressed the Sackier attorney admission issue in its final written decision. *Cook Grp. Inc. v. Bos. Sci. Scimed, Inc.*, No. IPR2017-00135, 2018 Pat. App. LEXIS 10664, *67–68 (P.T.A.B. Nov. 15, 2018). The Board said that it had "considered Petitioner's argument that Patent Owner changed its position from the Preliminary Response" and concluded that it "will not bind Patent Owner to attorney arguments made in its

Cook argues that the Board's decision is not supported by substantial evidence because the Board failed to consider Boston's Preliminary Patent Owner Response, in which Boston explained:

> Sackier teaches that the clamp applier in Figure 16 is opened laterally (*i.e.*, widened) to attach the clamp. Specifically, "[b]oth of the cylinders 170 and 174 can be configured to open laterally in order to permit the associated flanges 172 and 176 to engage the recesses 165 and 161." By opening laterally, the cylinders are moved outwardly, thereby widening the cylinder to fit the ball into the clamp applier and permitting the flanges to engage the associated recesses. In fact, Sackier teaches that the lateral opening of the clamp applier is necessary to engage the clamp because the flange 172 "has an inside diameter . . . less than the diameter of the flange 167" and flange 176 "has an inside diameter . . . less than the diameter of the ball 163." Thus, the ball will not fit into the clamp applier without opening the clamp applier laterally.

J.A. 2445 (citations omitted). Cook argues that the Board should have considered this admission and that, if the Board had considered it, the Board could have reached only one conclusion—that claims 4–6, 15, and 20 are obvious. We agree that the Board should have considered Boston's admission, but we do not agree that fact necessarily

---

Preliminary Response." *Id.* We understand the Board's statement in IPR2017–00135 as articulating the same point it made during the hearing. That is, that the Board's view was that it was inappropriate to hold a party to attorney statements made in a preliminary patent owner response.

requires a finding by us that Cook satisfied it burden to prove the relevant claims unpatentable.

The Board erred in refusing to consider Boston's Preliminary Patent Owner Response admission when it was weighing the evidence supporting each side's understanding of Sackier. This is not a question we have expressly addressed before. It is well established, however, that a statement made by a party in an individual or representative capacity may be offered as evidence against that party. *Oscanyan v. Arms Co.*, 103 U.S. 261, 263 (1880); *Tyler Refrigeration v. Kysor Indus. Corp.*, 777 F.2d 687, 690 (Fed. Cir. 1985); Fed. R. Evid. 801(d)(2)(A). We hold, therefore, that an admission in a preliminary patent owner response is evidence appropriately considered by a factfinder. The amount of weight to give an admission is, however, properly considered in the first instance by the factfinder. A factfinder may give this admission great weight, some weight, or zero weight, depending on the context. Accordingly, we vacate the Board's finding that Sackier and Nishioka do not render claims 4–6, 15, and 20 obvious, and remand for the Board to consider, in the first instance, Boston's admission and the impact of that admission on the balance of the evidence.

C. Substantial Evidence Supports the Board's
Finding That Cook Failed to Prove
Claims 4–6, 15, and 20 Obvious
Over Nishioka and Matsuno

Cook argues that the Board erred when it found that Cook did not meet its burden to establish that a POSA would have been motivated to combine Nishioka with Matsuno. Appellant's Br. 63–76. After considering Cook's evidence and argument on motivation to combine, the Board explained:

> [W]e are left with the loss of the key functions of the Nishioka device – to identify and excise tissue samples. A conclusory statement that the person

of ordinary skill in the art could modify Nishioka to obtain the same benefits for the Nishioka clip that are disclosed in Matsuno fails to address motivation to make the combination in the first place. Moreover, the loss of both functions in Nishioka again is such that it would not satisfy its intended purpose. We find this combination most likely motivated solely by impermissible hindsight.

J.A. 42. Cook argues that this was error because the Board: (1) erred in finding no motivation to combine unless the prior art reference retained its "key functions," (2) erroneously failed to consider Cook's post-institution evidence, and (3) erred by failing to provide adequate reasons for rejecting the combination. Appellant's Br. 64–73.

First, Cook argues, we have not required preservation of all desirable properties of the prior art to find obviousness. For example, we have affirmed the Board's finding of obviousness despite the fact that the proposed modification to the primary prior art reference would render it inoperable for its intended purpose. *In re Urbanski*, 809 F.3d 1237, 1242–43 (Fed. Cir. 2016).

The Board did not err as a matter of law when it explained that the loss of key functions in the primary reference here supports a finding of no motivation to combine. Cook is correct that the loss of key functionality does not necessitate a finding of nonobviousness where the patentee's "claims do not require the [primary reference]'s benefit that is arguably lost by the combination with [the second reference]." *See Urbanski*, 809 F.3d at 1244 (explaining that loss of key functionality can be overcome by evidence that a POSA would nevertheless be motivated to combine references). In *DePuy*, however, we explained, "[a]n inference of nonobviousness is especially strong where the prior art's teachings undermine the very reason being proffered as to why a person of ordinary skill would have combined the known elements," i.e., where a prior art

reference "teaches away" from the proposed modification. *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1326 (Fed. Cir. 2009). Together, these cases stand for the proposition that, where the motivation to combine rests on a modification alleged to improve the primary reference, as is the case here, the Board may consider whether the modification renders the reference inoperable for its intended function in deciding whether a POSA would have a motivation to combine the references, even if that function is not a feature of the claimed device at issue. The Board did not err in finding that this is not a situation where "one of ordinary skill would have been motivated to pursue the desirable properties taught by [the secondary reference], even at the expense of foregoing the benefit taught by [the primary reference]." *Urbanski*, 809 F.3d at 1243. The Board did not improperly expand that proposition to a per se rule in this case. Rather, the Board properly weighed the loss of key functions as a relevant factor in the motivation to combine analysis.

Second, Cook argues that the Board failed to consider Cook's post-institution evidence—including expert testimony and medical articles. It is well established that the Board must consider all record evidence in its final written decision. *See Genzyme Therapeutic Prod. Ltd. v. Biomarin Pharm. Inc.*, 825 F.3d 1360, 1367 (Fed. Cir. 2016). The Board expressly considered only paragraphs 64–65 of Cook's expert's declaration in the section of the final written decision discussing the combination of Nishioka and Matsuno. J.A. 41–42. The Board, however, considered Cook's post-institution evidence in its discussion of Nishioka in combination with Shinozuka. J.A.38–39. The Board cross-referenced that portion of the decision when discussing the Nishioka/Matsuno combination. J.A. 42. The Board therefore properly considered all the evidence before it and did not err.

Third, Cook argues that the Board's analysis is inadequate and therefore not in accordance with the law.

20    COOK GROUP INCORPORATED v. BOSTON SCIENTIFIC SCIMED, INC.

Appellant's Br. 72–73.  We do not agree.  The Board fully considered the record before it.  We conclude that the Board's  finding that a POSA would not be motivated to combine Nishioka and Matsuno is supported by substantial evidence.

### D. Substantial Evidence Supports the Board's Finding that Claims 1–3, 7–14, and 16–19 are Unpatentable

Boston cross-appeals the Board's determination that claim 1–3, 7–14, and 16–19 are unpatentable over Nishioka and over Nishioka in combination with Sackier.  We have considered Boston's arguments.  We conclude that the Board's decision as to these claims is in accordance with the law and supported by substantial evidence.  We therefore affirm as to all issues raised in Boston's cross-appeal.

### III. CONCLUSION

In sum, we vacate and remand the Board's decision on the patentability of claim 20 over Malecki and on the patentability of claims 4–6, 15, and 20 over Sackier and Nishioka.  We affirm the Board's decisions in all other respects.

**AFFIRMED AS TO CASE NOS. 2019-1370, 2019-1375, 2019-1377; VACATED AND REMANDED AS TO CASE NO. 2019-1372**

COSTS

The parties shall bear their own costs.